[Cite as *Mozingo v. 2007 Gaslight Ohio, L.L.C.*, 2012-Ohio-5157.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ROBERT MOZINGO

      Appellee

      v.

2007 GASLIGHT OHIO, LLC, et al.

      Appellants

C.A. Nos.      26164
                26172

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV-2010-05-3516

DECISION AND JOURNAL ENTRY

Dated: November 7, 2012

---

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellants, 2007 Gaslight Ohio, LLC ("Gaslight") and George and Patricia Waliga ("the Waligas"), appeal from the judgment of the Summit County Court of Common Pleas, granting Plaintiff-Appellee, Robert Mozingo's, motion to certify a class action against them. This Court reverses.

I

{¶2} In May 1992, the Waligas purchased a mobile home park located in Tallmadge, Ohio and currently known as Gaslight Village Mobile Home Park ("the Park"). The Park consists of 104 units, but generally operates at less than capacity. Originally, the Waligas and the Park's prior owners provided natural gas to all of the Park's tenants by charging the tenants a monthly lump-sum that included rent, water, and gas. The rising cost of natural gas later led the Waligas to install sub-meters for each unit in the Park so that each unit could be billed according to its actual gas usage. The Waligas hired an outside company, Water Service Company, to read

the sub-meters each month for a monthly flat fee of $5 per meter. They also notified the Park's tenants of the new system for natural gas billing. Beginning in April 2001, the Waligas billed the Park's tenants for individual natural gas usage on a monthly basis. The billing system remained in place from that point forward. Gaslight continued to charge tenants according to monthly, individual usage when it purchased the Park sometime in 2007.

{¶3} Mozingo bought a unit in the Park in April 2002. Sometime in 2007, Mozingo asked the Park's manager to explain the specific charges that appeared on his billing statement. Mozingo also spoke with Dominion East Ohio ("Dominion"), the natural gas provider for the Park, and discovered that the monthly usage rate Dominion generally charged its residential customers was lower than the monthly usage rate the Park had billed Mozingo. As such, Mozingo came to believe that the Waligas and Gaslight had continually charged the Park's tenants an undisclosed mark-up on their usage rate for natural gas. Mozingo also determined that the $5 per month sub-meter reading fee charged by Water Service Company had been passed onto the tenants in their monthly gas bill without their knowledge.

{¶4} On May 14, 2010, Mozingo filed a class action suit against Gaslight and the Waligas based on allegations that they had repeatedly charged residents of the Park with unreasonable, undisclosed fees associated with natural gas usage. Gaslight and the Waligas answered the complaint, and discovery commenced. On April 15, 2011, Mozingo filed a motion to certify a class consisting of all current and former residents of the Park who were subject to its sub-metering system for natural gas usage and "charged for * * * their natural gas usage and associated gas meter reading fee." Both Gaslight and the Waligas opposed the motion to certify, and the trial court scheduled a hearing on the motion. On October 21, 2011, the trial court granted the motion and certified two subclasses: residents who were charged for natural gas

through the sub-metering system before Gaslight's purchase of Park, and residents who were charged after Gaslight's purchase.

{¶5}   Gaslight and the Waligas now appeal from the trial court's decision to grant Mozingo's motion for class certification and collectively raise five assignments of error for our review.  For ease of analysis, we consolidate the assignments of error.

II

Gaslight's Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION IN MAKING A LEGAL DETERMINATION OF THE MERITS OF PLAINTIFF'S CLAIM REGARDING GASLIGHT'S ALLEGED VIOLATION OF CHAPTER 3733 OF THE OHIO REVISED CODE.

The Waligas' Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION AND MADE A MISTAKE OF LAW BY SPECIFICALLY CONSIDERING AND DECIDING THE MERITS WHEN DETERMINING THE PROPRIETY OF CLASS ACTION.

Gaslight's Assignment of Error Number Two

THE TRIAL COURT ABUSED ITS DISCRETION GRANTING PLAINTIFF'S MOTION TO CERTIFY THIS CASE AS A CLASS ACTION.

The Waligas' Assignment of Error Number Two

THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO PROPERLY APPLY CIVIL RULE 23(A) WHEN GRANTING PLAINTIFF-APPELLEE'S MOTION TO CERTIFY AS CLASS ACTION.

The Waligas' Assignment of Error Number Three

THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO PROPERLY APPLY CIV[.]R.  23(B)  CONCERNING  THE UNMANAGEABILITY OF THE CLASS ACTION[.]

{¶6}   In their first assignments of error, Gaslight and the Waligas argue that the trial court abused its discretion by making legal conclusions on the merits in determining whether to grant Mozingo's motion to certify.  In their remaining assignments of error, Gaslight and the

Waligas argue that the trial court abused its discretion by granting the motion in the absence of evidence that all of the prerequisites for class action certification exist. We agree with both propositions.

{¶7} Civ.R. 23 governs class action certifications. Before a court may certify a case as a class action:

> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impractical; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be satisfied.

*In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, ¶ 6. Mozingo relied upon Civ.R. 23(B)(3) in his motion to certify. A trial court must make two findings to certify a class pursuant to Civ.R. 23(B)(3). *Id.* at ¶ 7. "First, it must find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and second, the court must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* It was Mozingo's burden to establish that he met all of the prerequisites for class action certification. *Sliwinski v. Capital Properties Mgt. Ltd.*, 9th Dist. No. 25867, 2012-Ohio-1822, ¶ 12.

{¶8} "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Rimedio v. SummaCare, Inc.*, 9th Dist. No. 25068, 2010-Ohio-5555, ¶ 33, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. "A determination by a trial court regarding class certification that is clearly outside the boundaries established by Civ.R. 23, or that suggests that the trial court did not conduct a rigorous analysis into whether or not the

prerequisites of Civ.R. 23 are satisfied, will constitute an abuse of discretion." (Internal citations and quotations omitted.) *Hill v. Moneytree of Ohio, Inc.*, 9th Dist. No. 08CA009410, 2009-Ohio-4614, ¶ 9, quoting *Cicero v. U.S. Four, Inc.*, 10th Dist. No. 07AP-310, 2007-Ohio-6600, ¶ 10. In reviewing a motion to certify, a trial court is "confined solely to the question of the appropriateness of class certification" and may not make any findings regarding the merits of the plaintiff's cause(s) of action. *Hill* at ¶ 13.

{¶9} The trial court wrote the following in its order granting Mozingo's motion to certify:

> *The defendants do not dispute [mark-up] fees were not disclosed by either the Waligas or [] Gaslight.* Instead, the defendants assert that, because differences exist between individual class members regarding the length of time in residence, whether they are in default of payment on their rent to the park, or the contract, Mr. Mozingo has failed to identify a sufficiently numerous class, that Mr. Mozingo is not a representative of the class, and that there are no common elements that predominate over the individual claims and defenses.
>
> Without deciding the merits of Mr. Mozingo's complaint, the Court finds substantial evidence to sustain certification of the class action in this matter. The evidence presented at hearing demonstrates a class of sufficient numerosity that it would be inefficient to bring each claim individually. The class is approximately 100 persons. To bring each claim to court on substantially identical statutory violations would be unmanageable. *Each of these class members was undisputedly charged a mark[-]up to their gas fees without disclosure as required by statute.* This is a common question of law throughout the class. *Mr. Mozingo has been a resident in the manufactured home park since 2002, and has never received written notice of the mark[-]up to gas fees from either the Waligas or [] Gaslight.* Therefore, he is typical, and sufficiently represents the interests both of residents who lived in the park when the Waligas owned it, and those who lived there under [] Gaslight's ownership.
>
> This Court also finds common questions of law and fact predominate over all individual claims and defenses in this matter and class action is the superior method to adjudication. The language of R.C. § 3733.11 is unequivocal and mandatory. *If written notice was not issued to the residents, it appears to this court that collection of gas fees was improper.*

(Emphasis added.) The italicized portions of the trial court's decision do not bear upon the propriety of class certification, but instead amount to an attempt, "contrary to the applicable law,

to reach the merits of the claim." *Hill* at ¶ 11, quoting *Ojalvo v. Bd. of Trustees of Ohio State University*, 12 Ohio St.3d 230, 233 (1984).

{¶10} Relying upon the United States Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), this Court has previously held:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such as soon as practicable after the commencement of the action. * * *
>
> In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.
>
> Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant.

(Internal citations and quotations omitted.) *Hill* at ¶ 12, quoting *Eisen* at 177-178. By finding that the Waligas and Gaslight failed to disclose mark-up fees to the Park's tenants and that each tenant of the Park, including Mozingo, was charged a mark-up on their gas fees without the required statutory disclosure, the trial court "explicitly examined the merits of the class action." *Hill* at ¶ 13. *Accord Ojalvo* at 233 (court went beyond class certification analysis when it determined a "certainty that a common issue of breach of three to six thousand contracts probably exists"). "As the trial court was confined solely to the question of the appropriateness of class certification, it was an abuse of discretion for the trial court to make any merit findings." *Hill* at ¶ 13.

**{¶11}** Although the court wrote in its decision that it found evidence to sustain a class certification "[w]ithout deciding the merits of [the] complaint," the remainder of the court's decision and the record contradict that statement. The vast majority of the class action certification hearing focused on whether a mark-up on the natural gas usage rate had occurred, the reasons for the mark-up, and whether the Park's tenants received notice of the mark-up. All of those topics distinctly bear upon the merits of Mozingo's complaint rather than the prerequisites for class certification. *See In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, at ¶ 6-7. Moreover, several components of the appropriate analysis for class action certification are noticeably absent from the trial court's decision. *See Setliff v. Morris Pontiac, Inc.*, 9th Dist. No. 08CA009364, 2009-Ohio-400, ¶ 7-10 (trial court abused its discretion when it did not appear that the court conducted a rigorous analysis of several of Civ.R. 23's prerequisites to certification).

**{¶12}** While not explicitly set forth in Civ.R. 23, two prerequisites to class certification are that the class be (1) identifiable, and (2) unambiguous. *Warner v. Waste Management, Inc.*, 36 Ohio St.3d 91 (1988), paragraphs one and two of the syllabus. "The requirement that the certified class be identifiable and unambiguous 'does not require a class certification to identify the specific individuals who are members so long as the certification provides a means to identify such persons.'" *Rimedio*, 2010-Ohio-5555, at ¶ 40, quoting *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 63 (1990). "The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class." *Project Jericho* at 63.

{¶13} The trial court did not discuss whether the class Mozingo proposed to certify was identifiable and unambiguous in its decision. Further, Mozingo did not present any evidence to support a finding of those prerequisites. Mozingo wrote in his motion to certify:

> [a]s the Park experienced move-outs, evictions, move-ins and other tenant attrition and additions throughout the course of at least fourteen (14) years (1996-present), the number of affected past and current residents is reasonably estimated to be in the hundreds.

Multiple individuals also testified regarding the high attrition rate at the Park over the years and the fact that written leases of any kind were a rarity for tenants. There was no discussion in Mozingo's motion or finding in the court's decision regarding the means Mozingo had to identify all the affected past and current residents. *See Rimedio* at ¶ 40, quoting *Jericho* at 63. Further, the trial court wrote in its decision that "[t]he class [was] approximately 100 persons." The testimony at the certification hearing was that there were approximately 100 tenants that *currently* lived at the Park. Despite identifying them as a subclass, the court did not account for all of the tenants who had resided at the Park since the installation of the sub-metering system in 2001. The court's decision does not support the conclusion that the court performed a rigorous analysis with regard to the requirements that a class be identifiable and unambiguous. *See Setliff*, 2009-Ohio-400, at ¶ 9-10.

{¶14} Another prerequisite to class action certification is that the named class representative actually be a member of the class he or she seeks to certify. *See In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, at ¶ 6. The class membership prerequisite requires that the class representative possess standing and "*have an action*" for the remedy he or she seeks on behalf of the class. (Emphasis sic.) *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 74 (1998). The trial court did not specifically discuss the class membership prerequisite, but implicitly found that Mozingo was a member of the class he sought to certify in

discussing other prerequisites of Civ.R. 23(A). Specifically, the court found that Mozingo was a typical and adequate class representative because he had lived in the Park since 2002 and never received written notice of any mark-up. There was no discussion in the court's decision, however, regarding the statute of limitations and whether the statute of limitations applicable to Mozingo's claims had expired. The Ohio Supreme Court has held that the statute of limitations is not reason to deny certification when some, but not all, members of the class may be barred by it. *Id.* at 84. The difference here is that Mozingo is the class representative, not simply a member of the class. Moreover, he is the only class representative. Several federal courts have determined that a class cannot be certified when the claims of its sole representative are barred by the statute of limitations because the individual cannot be said to be a member of the class. *See, e.g., Franze v. Equitable Assurance*, 296 F.3d 1250, 1254 (11th Cir.2002); *Great Rivers Co-op. of Southeastern Iowa v. Farmland Industries, Inc.*, 120 F.3d 893, 899 (8th Cir.1997). By not addressing the issue, the trial court failed to conduct a rigorous analysis of the class membership prerequisite to certification. *See Setliff* at ¶ 9-10.

{¶15} Our review of the trial court's decision leads us to conclude that the court properly analyzed the remaining requirements of Civ.R. 23(A). In particular, the court determined through the evidence Mozingo introduced that (1) the class he sought to certify encompassed at least 100 individuals, (2) the claims he filed on behalf of the class arose from the common question of whether contractual and/or statutory violations had occurred, and (3) he had an interest in maintaining the claims on behalf of the class because his status as a tenant subjected him to the same allegedly wrongful conduct as the other tenants. *See Martin v. Services Corp. Intern.*, 9th Dist. No. 20392, 2001 WL 688896, *3 (June 20, 2001) ("Generally, evidence of a class of more than forty people satisfies the numerosity requirement for class

certification."); *Hamilton* at 77 (commonality prerequisite satisfied if a "common liability issue" exists); *Rimedio v. SummaCare, Inc.*, 9th Dist. No. 21828, 2004-Ohio-4971, ¶ 23-24 (typicality satisfied if representative's claim arises from same course of conduct as other class members and rests upon same legal theory); *Hamilton* at 77-78 ("[A] representative is deemed adequate so long as his or her interest is not antagonistic to that of other class members."). Yet, the same cannot be said about the trial court's analysis of Civ.R. 23(B)(3).

{¶16} Under Civ.R. 23(B)(3), class action certification is appropriate if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

The trial court concluded that common questions of law and fact predominated over individual claims and defenses simply because the same contractual and/or statutory violations would be at issue in "a great number of cases." A predominance analysis, however, is "more demanding than the Civ.R. 23(A) commonality requirement and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy." *Setliff* at ¶ 9, quoting *Miller v. Volkswagen of America, Inc.*, 6th Dist. No. E-07-047, 2008-Ohio-4736, ¶ 45. The trial court did not consider any of the specific "matters pertinent to the findings" as listed in Civ.R. 23(B)(3) and quoted above. Civ.R. 23(B)(3). Further, the court did not conduct a meaningful analysis of the superiority prerequisite encompassed in Civ.R. 23(B)(3). "[I]n determining whether a class action is a superior method of adjudication, the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify

the expenditure of judicial time and energy involved therein." *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, at ¶ 8, quoting *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984). *Accord Henes v. Ostrov Corp.*, 30 Ohio App.3d 108, 110 (9th Dist.1986) (reasonable alternatives to class certification discussed). The trial court did not discuss any other available procedures in its decision granting certification. Based on our review, "[i]t does not appear * * * that the trial court conducted a rigorous analysis of the predominance and superiority requirement pursuant to Civ.R. 23(B)(3)." *Setliff* at ¶ 10.

{¶17} As discussed herein, the trial court did not conduct a rigorous analysis of all the prerequisites required for class action certification and also inappropriately engaged in several merits findings rather than limiting itself to the narrow issue of certification. We agree with Gaslight and the Waligas that the trial court abused its discretion by granting Mozingo's motion to certify. Consequently, Gaslight's and the Waligas' assignments of error are sustained for the reasons set forth in this opinion.

III

{¶18} Gaslight's and the Waligas' assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

―――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

CARR, J.
CONCURS.

DICKINSON, J.
CONCURRING.

{¶19} I agree with the majority that this matter must be remanded for the trial court to examine class certification without considering the merits of Mr. Mozingo's claims. "Although I acknowledge that, in *Ojalvo v. Bd. of Trs. of Ohio State Univ*., 12 Ohio St.3d 230, 466 N.E.2d 875 (1984), the Ohio Supreme Court termed a trial court's improper consideration of the merits in determining whether to certify a class an abuse of discretion, the true problem is that doing so is 'incorrect as a matter of law.'" *Hill v. Moneytree of Ohio Inc*., 9th Dist. No. 08CA009410, 2009-Ohio-4614, ¶ 15 (quoting *Ojalvo*, 12 Ohio St. 3d at 233) (Dickinson, J., concurring). I

join in the majority's opinion, therefore, not because I believe the trial court abused its discretion, but because it made a mistake of law.

APPEARANCES:

BRENDON P. FRIESEN, Attorney at Law, for Appellant.

SCOTT J. FLYNN, Attorney at Law, for Appellant.

THOMAS J. CONNICK and NICOLE D. LECLAIR, Attorneys at Law, for Appellee.

GEORGE W. COCHRAN, Attorney at Law, for Appellee.